## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

GREGORY HILL                                   CIVIL ACTION NO. 07-2185

VS.                                            SECTION P

SHERIFF STEVE PYLANT, ET AL.                   JUDGE JAMES

                                               MAGISTRATE JUDGE HAYES

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on December 12, 2007, by *pro se* plaintiff Gregory Hill.  Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Franklin Parish Detention Center (FPDC), Winnsboro, Louisiana and he complains that the defendants have interfered with his right to practice his chosen religion. He also complains that the defendants have violated his right to due process by not providing an adequate administrative remedies procedure at the prison. He seeks compensatory damages for mental, emotional, and psychological anguish; he also seeks declaratory judgments and injunctive relief.  He also requests a temporary restraining order and appointment of counsel.  He sues Franklin Parish Sheriff Steve Pylant and FPDC Warden Chad Lee. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.  It is also recommended that his Motion for Temporary Restraining Order [doc. 4] and his Motion for Appointment of Counsel [doc. 3] be **DENIED.**

### *Statement of the Case*

Plaintiff is an inmate in the custody of the LDOC. On January 3, 2007, he was transferred

1

to FPDC. Notwithstanding his requests, Sheriff Steve Pylant and Warden Chad Lee have failed to establish "... an Islamic community here at Franklin Parish Detention Center for the purpose to continue our spiritual growth and practices..." Plaintiff claims that the actions of the defendants violate the First and Fourteenth Amendments to the United States Constitution and the Religious Freedom Restoration Act passed by Congress in 1993.

Plaintiff further complains that he was not able "... to exhaust administrative remedies because prisoners have to write for an Administrative Remedy Procedure by filling out a request form..." According to plaintiff, these forms are not answered.   He claims that this is a violation of the rights guaranteed to him under the Fourteenth Amendment.

Plaintiff prays for a declaratory judgment (declaring the actions of the defendants to be in violation of the constitution and the Religious Freedom Restoration Act), injunctive relief (to order defendants to immediately arrange for an Islamic clergy and to establish an Islamic community with call outs for Islamic services and provision for dietary practices and to immediately provide a better Administrative Remedies Procedure that is prompt and adequate and better access to the law library) and for compensatory damages (for "... mental, emotional, and psychological anguish plaintiff has sustained in the amount of $8,000..."). [doc. 1-3]

Plaintiff also requests appointment of counsel because (1) he is unable to afford counsel; (2) the issues are complex; (3) plaintiff has limited access to the law library; and (4) plaintiff has limited knowledge of the law. [doc. 3] Plaintiff also requests a temporary restraining order demanding adequate access to the law library based upon his belief that he will be denied access at some point in the future. [doc. 4]

### Law and Analysis

### 1. Initial Review

When a prisoner sues an officer or employee of a governmental entity pursuant to

2

42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if  it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits  alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).  District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has provided a detailed description of the legal theories which he claims entitles

3

him to relief; he has recited facts supporting those theories. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted.

### 2.  *Practice of Religion*

#### *a. First and Fourteenth Amendments*

Plaintiff claims that his right to practice Islam has been curtailed by the defendants. Inmates clearly retain protections afforded by the First Amendment, including its directive that no law  shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives.  See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349.  The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice;  (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level;  (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987),

4

*Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff claims that his right to freely exercise his religion has been impaired as follows: "The actions of defendants ... failure to comply with United States Constitution First and Fourteenth Amendment by denying plaintiff's right to further his growth in Islam through the freedom of religious exercise do in fact violates the First Amendment and Religious Freedom Restoration Act passed by Congress in 1993." [doc. 1-3, p. 4]

The remedy plaintiff seeks is an order directing the defendants to "... arrange for an Islamic Clergy and ... to establish an Islamic Community with call outs for Islamic services in addition with the dietary practices..." [doc. 1-3, p. 5] He also seeks compensatory damages for mental, emotional and psychological damages..." [doc. 1-3, p. 6]

With regard to the first prong of the *Turner* test, plaintiff has not alleged that prison officials have <u>prohibited</u> him from practicing his religion. Indeed, according to the available evidence, plaintiff has never been prohibited from practicing his religion.

The second and forth prongs of the *Turner* test, address whether or not "alternative means" of practicing his religion have been made available to the plaintiff. In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, <u>the prison affords the inmates opportunities to exercise their faith</u>." *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). Plaintiff has not claimed that he was denied the right to practice his religion at any time. In *O'Lone v. Estate of Shabazz, supra.*, the inmate-plaintiffs complained that they were not allowed to attend the weekly Muslim

congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. *O'Lone v. Estate of Shabazz*, 482 U.S. at 345-46. The Supreme Court considered the evidence supplied by the prison administration  regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. The Court then noted that the plaintiff- inmates were not deprived of <u>all</u> forms of religious exercise.  Based upon these facts,  the Supreme Court held that the "ability on the part of [the inmates] to participate in <u>other religious observances </u>of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352.

To the extent that plaintiff implies that his Equal Protection rights were violated under the Fourteenth Amendment with respect to his ability to practice his religion in a manner similar to that permitted by Christians incarcerated at FPDC, such a claim likewise lacks merit.  This is so because,  "[t]o succeed on his equal protection claim, [plaintiff] must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992) ( citing *McCleskey v. Kemp*, 481 U.S. 279 (1987)). The Fourteenth Amendment requires that all persons similarly situated shall be treated alike, but it does not demand "that every religious sect or group within a prison – however few in numbers – must have identical facilities or personnel." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).   Again, prison administrators are obliged only to provide inmates with "reasonable <u>opportunities </u>... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." *Id.* at 322 n. 2, 92 S.Ct. 1079. Like the plaintiffs in *O'Lone v. Estate of Shabazz*, this plaintiff <u>has not, nor can he show that he has been deprived of all means of religious expression.</u>

With regard to the dietary complaints, plaintiff's claim fares no better.  Dietary issues are

clearly related to legitimate penological interests in providing proper nutritious meals to <u>all</u> the prisoners without undue cost.  *Baranowski v. Hart*, 486 F.3d 112 (5th Cir.2007) (holding that prison officials failure to provide kosher meals did not violate inmates free exercise rights). The Fifth Circuit has held that the first factor in the *Turner* test, whether there is a rational relationship between the regulation and the legitimate government interest advanced, is the controlling question, and the other factors merely help a court determine if the connection is logical. *Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 81 (5th Cir.1992) (commenting that neither *Turner* nor *O'Lone* require courts to weigh evenly, or even consider the other three factors). Thus, the dietary complaints are clearly frivolous under established Fifth Circuit and Supreme Court jurisprudence.

In short, plaintiff has failed to demonstrate that his First Amendment free-exercise right has been violated. See *Mumin v. Phelps*, 857 F.2d 1055, 1056 (5th Cir.1988) (holding that even a prison regulation which <u>prohibited</u> Muslim inmates from attending Friday services was not unconstitutionally restrictive because it satisfied all four "reasonableness" considerations).

"[T]he loss of [plaintiff's] absolute freedom of religious expression is but one sacrifice required by [his] incarceration...." *Scott v. Mississippi Dep't of Corrections*, 961 F.2d at 82. See *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir.1995) ("Reasonable time, place, or manner restrictions upon ... religious gatherings do not necessitate the identification of a compelling state interest.")  Accordingly, the undersigned concludes that plaintiff's First Amendment free exercise of religion claim is frivolous.

### b. Religious Freedom Restoration Act of 1993

Plaintiff also maintains that the defendants have violated the Religious Freedom Restoration Act (RFRA).  The RFRA was enacted in response to *Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 878-882, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), in

which the Supreme Court held that the Free Exercise Clause is not offended by the enforcement of laws of general application that incidentally burden religious conduct. See *Cutter v. Wilkinson*, 544 U.S. 709, 714-15, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). The RFRA prohibits a government from substantially burdening a person's exercise of religion unless the government demonstrates that the burden is the least restrictive means of furthering a compelling government interest. 42 U.S.C. §§ 2000bb, *et seq*. However, the Supreme Court invalidated the RFRA as applied to States and their subdivisions, holding that it exceeded Congress' powers under the Fourteenth Amendment. *City of Boerne v. Flores*, 521 U.S. 507, 532-36, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).  Thus, to the extent that plaintiff maintains that the actions of the defendants are in violation of the RFRA, he has failed to state a claim for which relief might be granted.

Liberally construed, and giving plaintiff the benefit of the doubt, it may be assumed that he intended to allege a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA)  [see 42 U.S.C. §2000cc *et seq*.] instead of the RFRA.  Even so, his claim fares no better.

RLUIPA mandates that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted that RLUIPA protects the rights of prisoners who are unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161

8

L.Ed.2d 1020 (2005).

In order to state a claim under RLUIPA, the prisoner must show that challenged government action places a substantial burden on the exercise of his religion. If the prisoner carries the burden of proof on this issue, then the government must demonstrate some compelling interest warranting the challenged action.  Under RLUIPA, a "religious exercise"  includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* *§* 2000cc-5(7)(A).  Thus, religious services, religious education, and dietary principles all qualify as "religious exercises."

While the statute does not define "substantial burden," Fifth Circuit  jurisprudence has defined it as follows in the context of the RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v.  Kaspar*, 393 F.3d 559 (5th Cir. 2004) at 569-70.

Plaintiff merely faults the defendants for failing to establish "... an Islamic community here at Franklin Parish Detention Center..."  However, he does not allege that the defendants have prevented the establishment of such a community.  Nor does he indicate that there are a significant number of Muslims incarcerated at FPDC; nor does he indicate that the population of Winnsboro and Franklin Parish include Islamic clergy who would be willing to assist in the religious education of Islamic prisoners at FPDC.[1] In short, the available evidence, and indeed common sense, suggests that plaintiff has not been prohibited from observing the tenets of Islam

---

[1] In fact, the available data reflects that the total population of Franklin Parish at the time of the 2000 census was 21,263 and that there were no practitioners of Islam in the parish. See Religious Congregations and Membership in the United States, 2000. Collected by the Association of Statisticians of American Religious Bodies (ASARB) and distributed by the Association of Religion Data Archives at www.theARDA.com . See also, http://www.thearda.com/mapsReports/reports/counties/22041_2000.asp

by the defendants; instead, the difficulties he experiences appear to be caused "... by the dearth of clergy and authorized volunteers..." in the geographical area he finds himself incarcerated in. Compare *Adkins*, 393 F.3d at 569-70.

Plaintiff's prayer for relief also mentions his desire to observe Islamic "dietary practices" [doc. 1-3, p. 5], however, he does not indicate that the defendants have prevented him from doing so in the first place. Thus, with regards to the issue of dietary practices, plaintiff has failed to state a claim cognizable under RLUIPPA.

### 3. Administrative Remedies

Plaintiff also complains that he has been denied due process because of inadequacies in the administrative remedies procedures available to FPDC inmates. With regard to this allegation, plaintiff fails to state a claim for which relief might be granted.  Prisoners do not have a constitutionally protected right to a grievance procedure. See, e.g., *Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, J., concurring) (applauding the adoption of grievance procedures by prisons, but expressly declining to suggest that such procedures are constitutionally mandated).   When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's failure to comply with appropriate grievance procedures. See *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991) (*per curiam*). Thus, plaintiff's complaint fails to state a claim for which relief may be granted.

### 4. 42 U.S.C. §1997e(e)

Plaintiff has prayed for declaratory judgment and injunctive relief with respect to his practice of religion and due process claims. As shown above, he is not entitled to relief on those claims.

10

In addition, plaintiff prayed for compensatory damages "... for the mental, emotional and psychological anguish plaintiff has sustained as a result of the actions of the defendants..." [doc. 1-3, p. 6]  Plaintiff has not alleged any physical injury resulting from the allegedly unconstitutional actions of the defendant.

42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act of 1996. Under the current version of the statute,  prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).  The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant.  *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997).  Plaintiff has alleged no physical injury resulting from the complained of acts of the defendants. Plaintiff has not even alleged injuries which are *de minimis* and therefore his complaint seeking monetary damages as compensation for mental injuries fails to state a claim for which relief may be granted. See *Herman v. Holiday*, 238 F.3d 660, 666 (5th Cir.2001).

**5. Temporary Restraining Order**

Plaintiff's Motion for a Temporary Restraining Order [doc. 4] is only vaguely related to his underlying claims for relief. Plaintiff does not seek immediate relief on his free exercise of religion and due process claims as would be expected; instead, he implies ("on information and belief") that he will be denied adequate access to the facility's law library and thus will be unable "... to research to prepare for trial ..."

A movant for a temporary restraining order or preliminary injunction must demonstrate each of the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction

11

will not have an adverse effect on the public interest. *Women's Med. Ctr. of Northwest Houston v. Bell*, 248 F.3d 411, 418-20 (5th Cir.2001). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable harm." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir.1976).

Plaintiff simply cannot prevail because he cannot demonstrate a substantial likelihood of success on the merits.  As shown above, both of plaintiff's claims for relief should be dismissed on initial review as frivolous or otherwise for failing to state a claim for which relief may be granted. Further, plaintiff's allegations concerning access to legal materials are conclusory at best and, standing alone do not establish a "substantial" likelihood of irreparable harm.  As shown above, plaintiff's allegations are "on information and belief" only; he has not shown that the defendants have interfered with or threatened to interfere with his right of access to the courts.

Therefore, the Motion for a Temporary Restraining Order [doc. 4] should be denied.

### 6. Appointment of Counsel [doc. 3]

Finally, plaintiff has requested appointment of counsel to assist him in these proceedings. Initially, the undersigned notes that plaintiff is proceeding in *forma pauperis*.  A review of the pleadings supports a finding that he should be considered indigent for the purposes of this evaluation.

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983.  "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985).  Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff.  (In the case of *Mallard v. United States District Court for the Southern District*,  490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United

States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.)

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989).  No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors:  the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file his original complaint setting forth various causes of action against various named defendants.  He has also filed a Motion for a TRO and the instant Motion. The claims he raised are not necessarily atypical of those often asserted in civil rights litigation and are not complex.  Plaintiff has first hand knowledge of the facts which form the basis of this action and needs no assistance in recounting those facts to the court.

13

Further, the undesigned has recommended dismissal of these claims on initial review, and therefore, plaintiff's expressed need for counsel to assist in pre-trial discovery and trial are unfounded.

Finally, plaintiff has failed to demonstrate that he has exhausted all attempts to procure counsel on his own behalf.

Accordingly, plaintiff's request for appointment of counsel should be denied at this time as the circumstances presented herein are not "exceptional" so as to  warrant the appointment of counsel.

*7. Conclusion*

Based upon the foregoing,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint (including his prayer for injunctive relief)  [doc. 1] be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. §§1915 and 1915A;

**IT IS FURTHER RECOMMENDED THAT** plaintiff's Motion for Temporary Restraining Order [doc. 4] be **DENIED**; and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's Motion for Appointment of Counsel [doc. 3] be **DENIED.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers at Monroe, Louisiana, this 17th day of January, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE